05-503 T
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HOSPITAL SERVICE ASSOCIATION OF
NORTHEASTERN PENNSYLVANIA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# APPENDIX B TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT THEREOF

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
W.C. RAPP
KAREN SERVIDEA
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3423
(202) 514-9440 (Fax)

APPENDIX B
TABLE OF CONTENTS

Page:


| Exhibit | Description | |
|---|---|---|
| 1 | Plaintiff's Answers to Defendant's First Set of Requests for Admission | B-1 |
| 2 | Plaintiff's Answers to Defendant's First Set of Interrogatories | B-8 |
| 3 | Plaintiff's Answers to Defendant's Second Set of Requests for Admission | B-30 |
| 4 | Plaintiff's Answers to Defendant's Second Set of Interrogatories | B-49 |
| 5 | Letter of September 22, 2006, from Adam Feinberg to Karen Servidea | B-63 |
| 6 | Excerpt from Plaintiff's 1991 Annual Statement | B-68 |
| 7 | Excerpt from Plaintiff's 1992 Annual Statement | B-78 |
| 8 | Excerpt from Plaintiff's 1993 Annual Statement | B-92 |
| 9 | Excerpt from Plaintiff's 1994 Annual Statement | B-105 |
| 10 | Excerpt from Plaintiff's 1995 Annual Statement | B-118 |
| 11 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1991 | B-129 |
| 12 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1992 | B-132 |
| 13 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1993 | B-135 |
| 14 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1994 | B-138 |

TABLE OF CONTENTS (CONTINUED)


| | | Page: |
|---|---|---|
| 15 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1995 | B-141 |
| 16 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1996 | B-144 |
| 17 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1997 | B-152 |
| 18 | Excerpt from Ernst & Young Valuation Report dated April 10, 1997 | B-157 |

05-503 T
(Judge Wheeler)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

HOSPITAL SERVICE ASSOCIATION OF
NORTHEASTERN PENNSYLVANIA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

APPENDIX B TO UNITED STATES' MOTION
FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT THEREOF

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
W.C. RAPP
KAREN SERVIDEA
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 616-3423
(202) 514-9440 (Fax)

# APPENDIX B
# TABLE OF CONTENTS


| Exhibit | Description | Page: |
|---|---|---|
| 1 | Plaintiff's Answers to Defendant's First Set of Requests for Admission | B-1 |
| 2 | Plaintiff's Answers to Defendant's First Set of Interrogatories | B-8 |
| 3 | Plaintiff's Answers to Defendant's Second Set of Requests for Admission | B-30 |
| 4 | Plaintiff's Answers to Defendant's Second Set of Interrogatories | B-49 |
| 5 | Letter of September 22, 2006, from Adam Feinberg to Karen Servidea | B-63 |
| 6 | Excerpt from Plaintiff's 1991 Annual Statement | B-68 |
| 7 | Excerpt from Plaintiff's 1992 Annual Statement | B-78 |
| 8 | Excerpt from Plaintiff's 1993 Annual Statement | B-92 |
| 9 | Excerpt from Plaintiff's 1994 Annual Statement | B-105 |
| 10 | Excerpt from Plaintiff's 1995 Annual Statement | B-118 |
| 11 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1991 | B-129 |
| 12 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1992 | B-132 |
| 13 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1993 | B-135 |
| 14 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1994 | B-138 |

TABLE OF CONTENTS (CONTINUED)


| | | Page: |
|---|---|---|
| 15 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1995 | B-141 |
| 16 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1996 | B-144 |
| 17 | Excerpt from Plaintiff's Original Income Tax Return (Form 1120) for 1997 | B-152 |
| 18 | Excerpt from Ernst & Young Valuation Report dated April 10, 1997 | B-157 |

# Defendant's Exhibit # 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 05-503 T |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Rules 26 and 36 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Hospital Service Association of Northeastern Pennsylvania ("Plaintiff") answers Defendant the United States of America's First Set of Requests for Admission as follows:

**General Objections**

Plaintiff objects to the United States' First Set of Requests for Admissions to the extent the United States seeks to impose burdens or requirements in excess of those imposed by the RCFC. Plaintiff also objects to the United States' First Set of Requests for Admissions on the grounds that they are vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**Answers to Requests for Admission**

**Request for Admission No. 1:**

The Form 1120X Amended U.S. Corporation Income Tax Return for the 1991 tax year, attached to the Complaint as Exhibit C, was not filed within three years of the date on which plaintiff filed its original Form 1120 U.S. Corporate Income Tax Return for the 1991 tax year.

**<u>Answer to Request for Admission No. 1:</u>**

Admitted.

**<u>Request for Admission No. 2:</u>**

The Form 1120X Amended U.S. Corporation Income Tax Return for the 1991 tax year, attached to the Complaint as Exhibit C, was not filed within two years of the date on which plaintiff made any payments towards its income tax liability for the 1991 tax year.

**<u>Answer to Request for Admission No. 2:</u>**

Admitted.

**<u>Request for Admission No. 3:</u>**

Plaintiff did not file a formal refund claim with the Internal Revenue Service ("IRS") for the 1993 tax year based on the losses described in paragraph 46 of the Complaint and the regular tax net operating loss described in paragraph 47 of the Complaint.

**<u>Answer to Request for Admission No. 3:</u>**

Admitted. However, plaintiff did file an informal refund claim with the IRS for the 1993 tax year based on the losses described in paragraph 46 of the Complaint and the regular tax net operating loss described in paragraph 47 of the Complaint.

**<u>Request for Admission No. 4:</u>**

Plaintiff did not file a formal refund claim with the IRS for the 1994 tax year based on the losses described in paragraph 55 of the Complaint.

**<u>Answer to Request for Admission No. 4:</u>**

Admitted. However, plaintiff did file an informal refund claim with the IRS for the 1994 tax year based on the losses described in paragraph 55 of the Complaint.

**<u>Request for Admission No. 5:</u>**

Plaintiff did not file a formal refund claim with the IRS for the 1995 tax year based on the losses described in paragraph 63 of the Complaint.

**<u>Answer to Request for Admission No. 5:</u>**

Admitted. However, plaintiff did file an informal refund claim with the IRS for the 1995 tax year based on the losses described in paragraph 63 of the Complaint.

**Request for Admission No. 6:**

Plaintiff's original Form 1120 federal income tax return for the 1996 tax year did not constitute a claim for refund.

**Answer to Request for Admission No. 6:**

Admitted.

**Request for Admission No. 7:**

The protest letter referred to in paragraph 74 of the Complaint did not constitute a claim for refund for the 1996 tax year.

**Answer to Request for Admission No. 7:**

Denied. The protest letter referred to in paragraph 74 of the Complaint constituted an informal claim for refund for the 1996 tax year.

**Request for Admission No. 8:**

Plaintiff's original Form 1120 federal income tax return for the 1996 tax year did not disclose an overpayment.

**Answer to Request for Admission No. 8:**

Admitted.

**Request for Admission No. 9:**

Plaintiff did not make any payments towards its 1996 tax liability, other than an interest payment for failing to timely pay the amount of taxes revealed on plaintiffs original Form 1120 federal income tax return for the 1996 tax year, between the date on which plaintiff filed its original Form 1120 federal income tax return for the 1996 tax year and the date on which plaintiff filed the protest letter referred to in paragraph 74 of the complaint.

**Answer to Request for Admission No. 9:**

Admitted. However, during the IRS's examination process for the 1996 and 1997 tax years, the IRS issued a partially agreed report on December 7, 1999, setting forth agreed and unagreed adjustments. Based on the agreed adjustments, Plaintiff was entitled to a refund for an overassessment in tax, but unagreed adjustments for subscriber abandonment losses reduced the

amount of the agreed overassessment. At this time, if not sooner, Plaintiff became entitled to a refund for subscriber intangible abandonment losses in 1996 and 1997

**Request for Admission No. 10:**

At the time plaintiff filed the protest letter referred to in paragraph 74 of the Complaint, plaintiff had not paid the additional tax for the 1996 tax year that was assessed against plaintiff during the IRS's examination process due to the disallowance of plaintiff s claimed deductions for the losses described in paragraph 71 of the Complaint.

**Answer to Request for Admission No. 10:**

Denied. At the time plaintiff filed the protest letter, the IRS had issued a partially agreed report setting forth agreed and unagreed adjustments. Based on the agreed adjustments, Plaintiff was entitled to a refund for an overassessment in tax, but unagreed adjustments for abandonment losses reduced the amount of the agreed overassessment. Therefore, at the time the plaintiff filed the protest letter, plaintiff had overpaid its tax and was entitled to a refund for subscriber intangible abandonment losses.

**Request for Admission No. 11:**

To the extent that plaintiff's original Form 1120 federal income tax return for the 1997 tax year constituted a claim for refund based on deductions for the losses described in paragraph 79 of the Complaint, such claim for refund was granted and paid by defendant through the issuance of a credit on April 15, 1998.

**Answer to Request for Admission No. 11:**

Denied. Plaintiff does not contend that its original Form 1120 federal income tax return for the 1997 tax year constituted a claim for refund based on deductions for the losses described in paragraph 79 of the Complaint.

**Request for Admission No. 12:**

The protest letter referred to in paragraph 82 of the Complaint did not constitute a claim for refund for the 1997 tax year.

**Answer to Request for Admission No. 12:**

Denied. The protest letter referred to in paragraph 82 of the Complaint constituted an informal claim for refund for the 1997 tax year.

**Request for Admission No. 13:**

The IRS did not disallow plaintiff's deductions for the 1997 tax year based on the losses described in paragraph 79 of the Complaint until after the IRS issued a credit for the full amount of overpayment disclosed by plaintiff's original Form 1120 income tax return for the 1997 tax year.

**Answer to Request for Admission No. 13:**

Admitted.

**Request for Admission No. 14:**

Plaintiff did not make any payments towards its 1997 tax liability between April 15, 1998, and the date on which plaintiff filed the protest letter referred to in paragraph 82 of the Complaint.

**Answer to Request for Admission No. 14:**

Admitted. However, see Answer to Request for Admission No. 9.

**Request for Admission No. 15:**

At the time plaintiff filed the protest letter referred to in paragraph 82 of the Complaint, plaintiff had not paid the additional tax for the 1997 tax year that was assessed against plaintiff during the IRS's examination process due to the disallowance of plaintiffs claimed deductions for the losses described in paragraph 79 of the Complaint.

**Answer to Request for Admission No. 15:**

Denied. See Answer to Request for Admission No. 10.

**Request for Admission No. 16:**

Document US406 through US407, attached hereto, is a true and authentic copy of a Form CG-4549-A, Income Tax Examination Changes, issued to plaintiff by IRS examiner John Gorman, on December 7, 1999.

**Answer to Request for Admission No. 16:**

Admitted.

Respectfully submitted,

Frederick H. Robinson

MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Counsel of Record for Plaintiff

*Of Counsel:*
Clarence T. Kipps, Jr.
Maria O. Jones
Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Dated: March 20, 2006

# Defendant's Exhibit # 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 05-503 T |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Hospital Service Association of Northeastern Pennsylvania ("Plaintiff") answers Defendant the United States of America's First Set of Interrogatories as follows:

**General Objections**

1. Plaintiff objects to the United States' First Set of Interrogatories to the extent the United States seeks to impose burdens or requirements on Plaintiff in excess of those imposed by the RCFC.

2. Plaintiff objects to the United States' First Set of Interrogatories on the grounds that they exceed 25 in number including all discreet subparts.

3. Plaintiff reserves the right to supplement its answers to the United States' First Set of Interrogatories as appropriate.

**Answers to Interrogatories**

**Interrogatory No. 1:**

If plaintiff responds with anything but an unequivocal admission to any request contained in Defendant's Requests for Admissions-Set No. 1:

(a) Quote the phrase, word, or words that plaintiff does not admit;

(b) State in detail each fact that (in plaintiff's view) supports the refusal to admit the clause, phrase, word, or words listed in response to Interrogatory 1(a), identifying all persons who have knowledge of each such fact and describing all documents that support each such fact; and

(c) If plaintiff does not agree with the defendant's statement of the subject of the requested admission, fully state plaintiff's view of the facts, and separately set forth the evidence upon which plaintiff relies to support its point of view.

**Answer to Interrogatory No. 1:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and unreasonably cumulative and duplicative of other discovery requests. Plaintiff also objects to this Interrogatory on the grounds that it by itself exceeds the 25 interrogatories (including discreet subparts) permitted by RCFC 33(a). Subject to and without waiving its objections, Plaintiff answers as follows. Where applicable, and not objectionable on the grounds stated above, Plaintiff has explained the basis of its denials in its Answer to Defendant's First Set of Requests for Admission, and incorporates those answers herein.

**Interrogatory No. 2:**

State all facts upon which plaintiff relies to support its allegation that the Form 1120X Amended U.S. Corporation Income Tax Return for the 1991 tax year, attached to the complaint as Exhibit C, was "timely filed" as alleged in paragraph 32 of the Complaint.

**Answer to Interrogatory No. 2:**

None. Plaintiff is withdrawing Count One from the Complaint.

**Interrogatory No. 3:**

State all facts upon which plaintiff relies to support its allegations contained in paragraphs 33 and 41 of the Complaint that plaintiff filed an amended refund claim for the 1991 and 1992 tax years on or about June 30, 1997.

**Answer to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows.

An opening conference for the IRS audit of the 1987 through 1994 tax years, held on March 26, 1997, was attended by John Celot, the IRS examining agent; John Gorman, an IRS insurance specialist with the examination division; Walt Kirwan, the IRS case manager; Ken Suchoski, who was then the Plaintiff's controller; and Dave Bobonski, who was then Plaintiff's tax manager. At this conference, the attendees discussed the status of the final Ernst & Young appraisals of the subscriber contracts and the assembled work force of Plaintiff as of January 1, 1987, and the final amounts to be claimed for intangibles abandonments, including abandonment of subscriber contracts, from 1987 through 1995.

Ernst & Young finalized the valuation of Plaintiff's subscriber intangibles and the determination of subscriber intangible losses incurred from 1987 through 1995 and provided the valuation to Plaintiff on May 23, 1997, with a cover letter from Lee C. Russell of Ernst & Young to Dave Bobonski. On June 27, 1997, Ernst & Young provided to Ken Suchoski, with a cover letter from I. Lee Holt of Ernst & Young, a worksheet for refund claims filed protectively through 1992 with revised calculations based on the final valuation. This worksheet shows the tax refund due for the 1991 and 1992 tax years based on the revised deductions for subscriber intangibles abandonments for the years 1991 through 1992 that are equal to the subscriber intangible losses for those years as set forth in the Ernst & Young final valuation report. The worksheet also shows the deduction amounts for subscriber intangibles abandonments for the 1993 through 1995 tax years based on the subscriber intangible losses for those years as set forth in the Ernst & Young final valuation report. These adjustments are provided under the heading "Explanation for Revised Amended Returns." This worksheet was provided with the Complaint as the first two pages of Exhibit D.

Either Ken Suchoski or Bill Smolok, a former controller of Plaintiff who was working part time for Plaintiff at that time, provided this worksheet to John Celot, the IRS agent, on or about June 30, 1997. The IRS received this worksheet as demonstrated by the fact that the worksheet was included among the documents produced by the government to plaintiff on February 14, 2006, at US547 to US548. This worksheet was also attached to an internal IRS memorandum from John Gorman to Walt Kirwan dated November 4, 1997, which indicates that John Gorman met with John Celot on November 3 and states, "The abandonment issue is present in this case via amended tax returns. Once the appraisal is reviewed, we can make our proposed adjustments as in other Blue audits." The notice of proposed adjustment issued to Plaintiff by

the IRS on October 18, 1999, proposed adjustments for the years 1987 through 1997 that were equal to the deductions for the subscriber intangibles abandonments set forth in the worksheet. The notice of proposed adjustment indicates that the abandonment deductions were taken on amended tax returns.

**Interrogatory No. 4:**

State all facts upon which plaintiff relies to support its allegations contained in paragraphs 33 and 41 of the Complaint that the amended claim for the 1991 and 1992 tax years that plaintiff allegedly filed on or about June 30, 1997, included deductions for losses described in paragraphs 26 and 38 of the Complaint and the net operating losses described in paragraphs 31 and 39 of the Complaint.

**Answer to Interrogatory No. 4:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. The first page of the worksheet provided with the Complaint as the first two pages of Exhibit D shows, in a line under the heading "Explanation for Revised Amended Returns," the decrease in net operating losses due to the subscriber intangibles abandonment deduction for each year from 1987 through 1995. In each year, the decrease in net operating losses due the subscriber intangibles abandonment is equal to the calculated abandonment loss for that year provided in the Ernst & Young final valuation. In another line under the heading "Explanation for Revised Amended Returns," the net operating loss adjustment due to revisions, including adjustments due to the subscriber intangible abandonments, is shown. At the bottom of the page, the total revised amended adjustments, which includes the adjustments due to the subscriber intangible abandonment

deductions, and the revised amended taxable income for each year are set forth. The second page of the workpapers shows the tax refund due for each year from 1991 to 1997 based on the revised amended taxable income set forth on the first page of the workpapers.

**Interrogatory No. 5:**

State all facts upon which plaintiff relies to support its allegations contained in paragraphs 33 and 41 of the Complaint that Exhibit D of the Complaint constituted an amended claim for refund for the 1991 and 1992 tax years.

**Answer to Interrogatory No. 5:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 3.

**Interrogatory No. 6:**

State all facts upon which plaintiff relies to support its allegation contained in Paragraph 48 of the Complaint that the plaintiff filed a refund claim for the 1993 tax year on or about June 30, 1997.

**Answer to Interrogatory No. 6:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows.

An opening conference for the IRS audit of the 1987 through 1994 tax years, held on March 26, 1997, was attended by John Celot, the IRS examining agent; John Gorman, an IRS insurance specialist with the examination division; Walt Kirwan, the IRS case manager; Ken

Suchoski, who was then the Plaintiff's controller; and Dave Bobonski, who was then Plaintiff's tax manager. At this conference, the attendees discussed the status of the final Ernst & Young appraisals of the subscriber contracts and the assembled work force of Plaintiff as of January 1, 1987, and the final amounts to be claimed for intangibles abandonments, including abandonment of subscriber contracts, from 1987 through 1995.

Ernst & Young finalized the valuation of Plaintiff's subscriber intangibles and the determination of subscriber intangible losses incurred from 1987 through 1995 and provided the valuation to Plaintiff on May 23, 1997, with a cover letter from Lee C. Russell of Ernst & Young to Dave Bobonski. On June 27, 1997, Ernst & Young provided to Ken Suchoski, with a cover letter from I. Lee Holt of Ernst & Young, a worksheet setting forth the tax refund due for the 1993 through 1995 tax years based on deductions for subscriber intangibles abandonments for the years 1993 through 1995 that are equal to the subscriber intangible losses for those years as set forth in the Ernst & Young final valuation report. These adjustments are provided under the heading "Explanation for Revised Amended Returns." This worksheet was provided with the Complaint as the first two pages of Exhibit D.

Either Ken Suchoski or Bill Smolok, a former controller of Plaintiff who was working part time for Plaintiff at that time, provided this worksheet to John Celot, the IRS agent, on or about June 30, 1997. The IRS received this worksheet as demonstrated by the fact that the worksheet was included among the documents produced by the government to plaintiff on February 14, 2006, at US547 to US548. This worksheet was also attached to an internal IRS memorandum from John Gorman to Walt Kirwan dated November 4, 1997, which indicates that John Gorman met with John Celot on November 3 and states, "The abandonment issue is present in this case via amended tax returns. Once the appraisal is reviewed, we can make our proposed

adjustments as in other Blue audits." The notice of proposed adjustment issued to Plaintiff by the IRS on October 18, 1999, proposed adjustments for the years 1987 through 1997 that were equal to the deductions for the subscriber intangibles abandonments set forth in the worksheet. The notice of proposed adjustment indicates that the abandonment deductions were taken on amended tax returns.

On December 9, 1999, the IRS issued a Letter 569 Preliminary Claim Disallowance for the years 1988 through 1995. The IRS attached to that letter a Form 3363 Acceptance of Proposed Disallowance of Claim for Refund or Credit, which indicated that the claims disallowed for 1993 through 1995 were informal claims. On December 9, 1999, the IRS issued a partially agreed report for the years 1993 through 1995 for items other than abandonment losses, which stated "subsequent to the processing of this partial agreement, your protest of the Service's full disallowance of your informal claims for abandonment losses will be sent to Appeals along with the formal claims disallowances for 1988 through 1992." On or about January 5, 2000, plaintiff filed a protest covering the years 1987 through 1997 disputing the disallowance of claimed deductions for losses on abandonment of subscriber contracts and noted therein that Plaintiff had filed informal refund claims with the Internal Revenue Service's Revenue Agent for the years 1993 through 1995 during the course of examination. The IRS issued formal notices of claim disallowance for each of the years 1991 through 1995 on April 27, 2001.

**<u>Interrogatory No. 7:</u>**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 48 of the Complaint that the claim for the 1993 tax year that plaintiff allegedly filed on or about

June 30, 1997, included deductions for the losses described in paragraph 46 of the Complaint and the net operating losses described in paragraph 47 of the Complaint.

**Answer to Interrogatory No. 7:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 4.

**Interrogatory No. 8:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 48 of the Complaint that Exhibit D of the Complaint constituted a claim for refund for the 1993 tax year.

**Answer to Interrogatory No. 8:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 6.

**Interrogatory No. 9:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 56 of the Complaint that plaintiff filed a refund claim for the 1994 tax year on or about June 30, 1997.

**Answer to Interrogatory No. 9:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject

to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 6.

**Interrogatory No. 10:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 56 of the Complaint that the claim for the 1994 tax year that plaintiff allegedly filed on or about June 30, 1997, included deductions for the losses described in paragraph 55 of the Complaint.

**Answer to Interrogatory No. 10:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 4.

**Interrogatory No. 11:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 56 of the Complaint that Exhibit D of the Complaint constituted a claim for refund for the 1994 tax year.

**Answer to Interrogatory No. 11:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 6.

**Interrogatory No. 12:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 64 of the Complaint that plaintiff filed a refund claim for the 1995 tax year on or about June 30, 1997.

**Answer to Interrogatory No. 12:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 6.

**Interrogatory No. 13:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 64 of the Complaint that the claim for the 1995 tax year that plaintiff allegedly filed on or about June 30, 1997, included deductions for the losses described in paragraph 63 of the Complaint.

**Answer to Interrogatory No. 13:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 4.

**Interrogatory No. 14:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 64 of the Complaint that Exhibit D of the Complaint constituted a claim for refund for the 1995 tax year.

**Answer to Interrogatory No. 14:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, and unreasonably cumulative and duplicative of other discovery requests. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the facts set forth in the Answer to Interrogatory No. 6.

**Interrogatory No. 15:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 72 of the Complaint that plaintiff claimed deductions based on the losses described in paragraph 71 of the Complaint on plaintiffs original Form 1120 federal income tax return for the 1996 tax year.

**Answer to Interrogatory No. 15:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the fact that Statement 55 (Combined Deductions Not on Books) of the Schedule M-1 attached to Plaintiff's original Form 1120 federal income tax return for the 1996 year lists a deduction of $433,020 for Abandonment Loss - Contracts/Workforce.

**Interrogatory No. 16:**

If you contend that plaintiff's original Form 1120 federal income tax return for the 1996 year constituted a claim for refund based on the losses described in paragraph 71 of the Complaint, state the basis of your contention.

**Answer to Interrogatory No. 16:**

Plaintiff does not so contend.

**Interrogatory No. 17:**

If you contend that the protest letter referred to in paragraphs 74 and 82 of the Complaint constituted a claim for refund based on the losses described in paragraphs 71 and 79 of the Complaint, state the basis of your contention.

**Answer to Interrogatory No. 17:**

The protest letter referred to in paragraphs 74 and 82 of the Complaint constituted an informal claim for refund based on the losses described in paragraphs 71 and 79 of the Complaint. The protest letter included an itemized schedule of the loss deductions for abandoned subscriber contracts for the tax years 1987 through 1997. The protest letter set forth computations of tax due or overpaid on unagreed adjustments, including subscriber abandonments, for 1987 through 1997 and indicated that plaintiff had overpaid tax on unagreed adjustments, including the adjustments for the subscriber abandonment deductions, for 1996 and 1997. The protest letter set forth the basis of the plaintiff's claims for refund based on the losses on subscriber abandonments.

The protest letter was submitted to the IRS with a cover letter from Peter Wood, Director of Taxes at Plaintiff, to Marv Rosner, Internal Revenue Service, indicating that the tax computations in the protest letter were for the refund of tax due to disputed deductions, including the claimed deductions for losses on abandonment of subscriber contracts. At the conclusion of the IRS's examination of Plaintiff's 1996 and 1997 tax years, Marshall Lyons, IRS Technical Coordinator, sent plaintiff a letter dated March 4, 2001, stating that the IRS had disallowed plaintiff's abandonment losses on the returns and attached a Letter 569 Preliminary Claim Disallowance indicating full disallowance of plaintiff's claim in the amount of $147,227 for 1996 and full disallowance of plaintiff's claim for $57,555 for 1997. On April 27, 2001, the IRS issued a formal notice of claim disallowance for plaintiff's claim in the amount of $147,227 for

the 1996 tax year and a formal notice of claim disallowance for plaintiff's claim in the amount of $57,555 for the 1997 tax year.

**Interrogatory No. 18:**

If you contend that, at the time plaintiff filed the protest letter referred to in paragraph 74 of the Complaint, plaintiff had paid the additional tax for the 1996 tax year assessed against plaintiff during the IRS's examination process due to the disallowance of plaintiff's claimed deductions for the losses described in paragraph 71 of the Complaint, state the basis of your contention.

**Answer to Interrogatory No. 18:**

At the time plaintiff filed the protest letter, the IRS had issued a partially agreed report setting forth agreed and unagreed adjustments for the 1996 tax year. Based on the agreed adjustments, Plaintiff was entitled to a refund for an overassessment in tax, but unagreed adjustments for abandonment losses, including losses described in paragraph 71 of the Complaint, reduced the amount of the agreed overassessment. Therefore, at the time the plaintiff filed the protest letter, plaintiff had overpaid its tax and was entitled to a refund for subscriber intangible abandonment losses.

**Interrogatory No. 19:**

State all facts upon which plaintiff relies to support its allegation contained in paragraph 80 of the Complaint that plaintiff claimed deductions based on the losses described in paragraph 79 of the Complaint on plaintiff s original form 1120 federal income tax return for the 1997 tax year.

**Answer to Interrogatory No. 19:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the fact that Statement 44 (Combined Deductions Not on Books) of the Schedule M-1 attached to Plaintiff's original Form 1120 federal income tax return for the 1997 year lists a deduction of $164,443 for Abandonment Loss - Contracts/Workforce.

**Interrogatory No. 20:**

If you contend that plaintiff's original Form 1120 federal income tax return for the 1997 year constituted a claim for refund based on the losses described in paragraph 79 of the Complaint and that defendant did not grant and satisfy such claim by issuing a credit to plaintiff in the amount of $244,406 on April 15, 1998, state the basis of your contention.

**Answer to Interrogatory No. 20:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff does not contend that its original Form 1120 federal income tax return for the 1997 year constituted a claim for refund based on the losses described in paragraph 79 of the Complaint. Because Plaintiff does not contend that its original Form 1120 federal income tax return for the 1997 year constituted a claim for refund based on the losses described in paragraph 79 of the Complaint, it does not contend that defendant did not grant and satisfy such claim by issuing a credit to plaintiff in the amount of $244,406 on April 15, 1998.

**Interrogatory No. 21:**

If you contend that, at the time plaintiff filed the protest letter referred to in paragraph 82 of the Complaint, plaintiff had paid the additional tax for the 1997 tax year that was assessed against plaintiff during the IRS's examination process due to the disallowance of plaintiff's

claimed deductions for the losses described in paragraph 79 of the Complaint, state the basis of your contention.

**Answer to Interrogatory No. 21:**

At the time plaintiff filed the protest letter, the IRS had issued a partially agreed report setting forth agreed and unagreed adjustments for the 1997 tax year. Based on the agreed adjustments, Plaintiff was entitled to a refund for an overassessment in tax, but unagreed adjustments for abandonment losses, including losses described in paragraph 79 of the Complaint, reduced the amount of the agreed overassessment. Therefore, at the time the plaintiff filed the protest letter, plaintiff had overpaid its tax and was entitled to a refund for subscriber intangible abandonment losses.

**Interrogatory No. 22:**

If you contend that plaintiff would have been entitled to a refund if the IRS had allowed plaintiff's claimed deductions for the losses described in paragraphs 71 and 79 of the Complaint at the time plaintiff filed the protest letter referred to in paragraphs 74 and 82 of the Complaint, state the basis of your contention.

**Answer to Interrogatory No. 22:**

At the time plaintiff filed the protest letter, the IRS had issued a partially agreed report setting forth agreed and unagreed adjustments for the 1997 tax year. Based on the agreed adjustments, Plaintiff was entitled to a refund for an overassessment in tax, but unagreed adjustments for abandonment losses, including losses described in paragraphs 71 and 79 of the Complaint, reduced the amount of the agreed overassessment. If the IRS had allowed plaintiff's claimed deductions for the losses described in paragraphs 71 and 79 of the Complaint at the time plaintiff filed the protest letter, plaintiff would have been entitled to a refund for the full amount

of the overassessment due to the agreed adjustments, which would not have been reduced by the amounts claimed as abandonment losses described in paragraphs 71 and 79 of the Complaint.

**Interrogatory No. 23:**

With respect to the first page of exhibit D of the Complaint, state the following:

(a) the person or entity that created the page;

(b) the date on which the page was created;

(c) the purpose for which the page was created; and

(d) what the person or entity did with the page after its creation, including any acts of transmitting the page to other person or entities, and the dates of such actions.

**Answer to Interrogatory No. 23:**

(a) The page was prepared by Ernst & Young, either by or under the direction of E&Y tax senior manager I. Lee Holt.

(b) The page was created after May 23, 1997, and on or before June 27, 1997.

(c) Ernst & Young completed a valuation of Plaintiff's subscriber intangibles and the losses incurred from 1987 through 1995 and provided the valuation to Plaintiff on May 23, 1997. Together with the second page of exhibit D, the first page of Exhibit D was created to show the tax refunds due to Plaintiff based on the May 1997 valuation. For 1991 and 1992, the amounts claimed on the worksheet were adjustments to the amounts claimed on the forms 1120X previously filed for those years. For 1993 through 1995, the worksheet set forth the total amounts claimed as deductions relating to Plaintiff's subscriber intangibles losses for 1993 through 1995.

(d) Ernst & Young provided the page to Ken Suchoski, who was then the controller of Plaintiff, on June 27, 1997. Either Ken Suchoski or Bill Smolok, who was then a former

controller of Plaintiff working part-time, provided the page to John Celot, who was the Internal Revenue Service examining agent for the audit of Plaintiff's 1993 and 1994 tax years, on or about that date.

**Interrogatory No. 24:**

With respect to the second page of exhibit D of the Complaint, state the following:

(a) the person or entity that created the page;

(b) the date on which the page was created;

(c) the purpose for which the page was created; and

(d) what the person or entity did with the page after its creation, including any acts of transmitting the page to other person or entities, and the dates of such actions.

**Answer to Interrogatory No. 24:**

See response to Interrogatory No. 23.

**Interrogatory No. 25:**

With respect to the third page of exhibit D of the Complaint, state the following:

(a) the person or entity that created the page;

(b) the date on which the page was created;

(c) the purpose for which the page was created; and

(d) what the person or entity did with the page after its creation, including any acts of transmitting the page to other person or entities, and the dates of such actions

**Answer to Interrogatory No. 25:**

(a) To the best of Plaintiff's knowledge, IRS Valuation Specialist, David M. Mielcarek, No. 23-02935 prepared this page.

(b) The page is dated October 18, 1999. To the best of Plaintiff's knowledge, that is the date the page was created.

(c) To the best of Plaintiff's knowledge, the page was created to notify Plaintiff of the IRS's proposed adjustments to plaintiff's income to be included in a Revenue Agent Report related to plaintiff's tax years 1987 through 1997 and to request that plaintiff furnish as soon as possible any additional information that would alter or reverse the proposal.

(d) Plaintiff received this page on or about October 18, 1999, in the course of the IRS examination process.

**OATH TO ANSWERS TO INTERROGATORIES**

I declare under penalty of perjury that the foregoing Plaintiff's Answers to Defendant's First Set of Interrogatories are true and correct to the best of my knowledge, information, and belief.

Peter Wood

Respectfully submitted,

Frederick H. Robinson
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Counsel of Record for Plaintiff

*Of Counsel:*
Clarence T. Kipps, Jr.
Maria O. Jones
Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Dated: March 20, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 20th day of March, 2006, caused a copy of the foregoing PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES to be served by U.S. Mail and facsimile upon the following:

Karen E. Servidea, Esquire
United States Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044
(202) 514-9440

Frederick H. Robinson

# Defendant's Exhibit # 3

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 05-503 T<br>Judge Thomas C. Wheeler |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION**

Pursuant to Rules 26 and 36 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Hospital Service Association of Northeastern Pennsylvania ("Plaintiff") answers Defendant the United States of America's Second Set of Requests for Admission as follows:

**General Objections**

Plaintiff objects to the United States' Second Set of Requests for Admissions to the extent the United States seeks to impose burdens or requirements in excess of those imposed by the RCFC. Plaintiff also objects to the United States' Second Set of Requests for Admissions on the grounds that they are vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**Answers to Requests for Admission**

**Request for Admission No. 1:**

Plaintiff has never capitalized the costs associated with creating healthcare coverage contracts.

**Answer to Request for Admission No. 1:**

Admitted.

**Request for Admission No. 2:**

In each of the years 1987 through 1997, plaintiff incurred substantial costs in creating, or facilitating the creation of, healthcare coverage contracts.

**Answer to Request for Admission No. 2:**

Admitted.

**Request for Admission No. 3:**

The expenditures plaintiff made in the years 1987 through 1997 to create, or facilitate the creation of, healthcare coverage contracts were not limited to expenditures for advertising and other selling expenses.

**Answer to Request for Admission No. 3:**

Plaintiff objects to this Request on the grounds that the terms "create, or facilitate the creation of, healthcare coverage contracts" and "selling expenses" are vague and undefined Subject to these objections, Plaintiff answers as follows. Admitted.

**Request for Admission No. 4:**

The expenditures plaintiff made in the years 1987 through 1997 to create, or facilitate the creation of, healthcare coverage contracts included payments to third parties for activities that helped plaintiff determine what rates to charge prospective subscribers.

**Answer to Request for Admission No. 4:**

Admitted.

**Request for Admission No. 5:**

A portion of plaintiff's internal costs (e.g., employee salaries and benefits) in the years 1987 through 1997 was attributable to creating, or facilitating the creation of, healthcare coverage contracts.

**Answer to Request for Admission No. 5:**

Admitted.

**Request for Admission No. 6:**

A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1997 was attributable to time spent reviewing applications for healthcare coverage contracts by prospective subscribers.

**Answer to Request for Admission No. 6:**

Admitted.

**Request for Admission No. 7:**

A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1997 was attributable to time spent investigating and/or analyzing the claims history of prospective subscribers.

**Answer to Request for Admission No. 7:**

Admitted.

**Request for Admission No. 8:**

A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1997 was attributable to time spent setting rates for healthcare coverage contracts for prospective subscribers.

**Answer to Request for Admission No. 8:**

Admitted.

**Request for Admission No. 9:**

A portion of the salaries and benefits paid by plaintiff to certain of its employees in the years 1987 through 1997 was attributable to time spent setting rates for healthcare coverage contracts for prospective subscribers on a subscriber-specific basis.

**Answer to Request for Admission No. 9:**

Admitted.

**Request for Admission No. 10:**

In the years 1987 through 1997, some of plaintiff's employees spent all or most of their time performing one or more of the following activities: (1) investigating the claims history of prospective subscribers; (2) analyzing the claims history of prospective subscribers; (3) setting rates for healthcare coverage contracts for prospective subscribers.

**Answer to Request for Admission No. 10:**

Admitted.

**Request for Admission No. 11:**

In the years 1987 through 1997, some of plaintiff s employees spent at least one half of their time performing one or more of the following activities: (1) investigating the claims history of prospective subscribers; (2) analyzing the claims history of prospective subscribers; (3) setting rates for healthcare coverage contracts for prospective subscribers.

**Answer to Request for Admission No. 11:**

Admitted.

**Request for Admission No. 12:**

In the years 1987 through 1997, some of plaintiff's employees spent at least one quarter of their time performing one or more of the following activities: (1) investigating the claims history of prospective subscribers; (2) analyzing the claims history of prospective subscribers; (3) setting rates for healthcare coverage contracts for prospective subscribers.

**Answer to Request for Admission No. 12:**

Admitted.

**Request for Admission No. 13:**

In the years 1977 through 1997 plaintiff incurred costs associated with creating, or facilitating the creation of, healthcare coverage contracts, but unrelated to advertising or selling expenses, that contributed to the generation of subscription income and provided a long-term benefit that plaintiff realized over the lives of the contracts.

**Answer to Request for Admission No. 13:**

Plaintiff objects to this Request on the grounds that many of the terms used therein are vague and undefined, including "costs associated with," "creating, or facilitating the creation of,

healthcare coverage contracts," "selling expenses," "contributed to the generation of subscription income," and "long-term benefit." Subject to these objections, Plaintiff answers as follows. Admitted with respect to some, but not all, healthcare coverage contracts.

**<u>Request for Admission No. 14:</u>**

Each of plaintiff's healthcare coverage contracts constitutes a separate and distinct intangible asset.

**<u>Answer to Request for Admission No. 14:</u>**

Admitted.

**<u>Request for Admission No. 15:</u>**

Plaintiff has a property interest in each of its healthcare coverage contracts.

**<u>Answer to Request for Admission No. 15:</u>**

Admitted.

**<u>Request for Admission No. 16:</u>**

Plaintiff's property interest in each of its healthcare coverage contracts can be sold or transferred separate and apart from the rest of plaintiff's business.

**<u>Answer to Request for Admission No. 16:</u>**

Admitted.

**<u>Request for Admission No. 17</u>**

The benefits plaintiff realizes from the expenditures plaintiff makes to create, or facilitate the creation of, healthcare coverage contracts are not fully realized within the year in which the expenditures are made.

**<u>Answer to Request for Admission No. 17</u>**

Plaintiff objects to this Request on the grounds that the term "create, or facilitate the creation of, healthcare coverage contracts" is vague and undefined. Subject to this objection, Plaintiff answers as follows. Admitted that some are not fully realized.

**Request for Admission No. 18**

Plaintiff's healthcare coverage contracts are assets with expected useful lives exceeding one year.

**Answer to Request for Admission No. 18**

Admitted that some of Plaintiff's healthcare coverage contracts are assets with expected useful lives exceeding one year. Denied that all are.

**Request for Admission No. 19**

Plaintiffs healthcare coverage contracts provide benefits to plaintiff for a period of time extending beyond the year in which they are entered into.

**Answer to Request for Admission No.19**

Admitted that some of Plaintiffs healthcare coverage contracts provide benefits to Plaintiff for a period of time extending beyond the year in which they are entered into. Denied that all do.

**Request for Admission No. 20**

Plaintiff has never sold or exchanged for consideration any of the contracts referred to in paragraph 18 of the complaint.

**Answer to Request for Admission No.20**

Admitted.

**Request for Admission No. 21**

In each of the years 1987 through 1997, for purposes of calculating its federal income tax liability, plaintiff deducted as ordinary and necessary business expenses certain costs incurred in creating, or facilitating the creation of, healthcare coverage contracts.

**Answer to Request for Admission No.21**

Admitted.

**Request for Admission No. 22**

In each of the 1987 through 1997 tax years, for purposes of calculating its federal income tax liability, plaintiff deducted as ordinary and necessary business expenses the costs referred to in number 13, supra.

**Answer to Request for Admission No. 22**

Admitted.

**Request for Admission No. 23**

During the period January 1, 1977, through January 1, 1997, plaintiff expensed the costs referred to in number 13, supra, for purposes of its financial accounting records.

**Answer to Request for Admission No. 23**

Admitted subject Plaintiff's objections to Request 13.

**Request for Admission No. 24**

Expensing the costs referred to in number 13, supra, during the period January 1, 1977, through January 1, 1997, was consistent with professional financial accounting standards.

**Answer to Request for Admission No. 24**

Admitted subject Plaintiff's objections to Request 13.

**Request for Admission No. 25**

Expensing the costs referred to in number 13, supra, during the period January 1, 1977, through January 1, 1997, was consistent with applicable insurance regulations.

**Answer to Request for Admission No. 25**

Admitted subject Plaintiff's objections to Request 13.

**Request for Admission No. 26**

On its original income tax returns for the 1987 through 1995 tax years, plaintiff did not claim deductions for terminated or cancelled healthcare coverage contracts.

**Answer to Request for Admission No. 26**

Admitted.

**Request for Admission No. 27**

Plaintiff claimed deductions for terminated or cancelled healthcare coverage contracts for each of the 1992 through 1995 tax years by filing a formal or informal refund claim with the IRS sometime after September 1, 1996.

**Answer to Request for Admission No. 27**

Admitted.

**Request for Admission No. 28**

Plaintiff claimed deductions for terminated or cancelled healthcare coverage contracts for the 1996 and 1997 tax years on its originally filed income tax returns for those years.

**Answer to Request for Admission No. 28**

Admitted.

**Request for Admission No. 29**

Plaintiff did not secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts between the time it filed its original income tax returns for the 1987 through 1995 tax years and the time it filed its refund claims for the 1992 through 1995 tax years.

**Answer for Request for Admission No. 29**

Plaintiff objects to this Request on the grounds that it incorrectly assumes a change in method of accounting. Plaintiff denies that any change in method of accounting took place.

**Request for Admission No. 30**

Plaintiff did not secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts between the time it filed its original income tax returns for the 1987 through 1995 tax years and the time it filed its original income tax returns for the 1996 and 1997 tax years.

**Answer to Request for Admission No. 30.**

Plaintiff objects to this Request on the grounds that it incorrectly assumes a change in method of accounting. Plaintiff denies that any change in method of accounting took place.

**Request for Admission No. 31**

Plaintiff contends that, for the 1992 through 1997 tax years, plaintiff is entitled to income tax deductions for expenses incurred in each of those years to create, or facilitate the creation of, healthcare coverage contracts as well as deductions for losses it sustained upon the termination or cancellation of healthcare coverage contracts.

**Answer to Request for Admission No. 31**

Admitted.

**Request for Admission No. 32**

A number of the healthcare coverage contracts held by plaintiff on January 1, 1987, were terminated or cancelled in each year after 1986.

**Answer to Request for Admission No. 32**

Admitted.

**Request for Admission No. 33**

Plaintiff intends to claim a deduction for the termination or cancellation of each healthcare coverage contract held by plaintiff on January 1, 1987, until all of the healthcare coverage contracts held by plaintiff on January 1, 1987, have ceased to be renewed.

**Answer to Request for Admission No. 33**

Plaintiff admits that it intends to claim a deduction for the termination or cancellation of each healthcare coverage contract held by plaintiff on January 1, 1987, when such contracts are actually terminated or cancelled.

**Request for Admission No. 34**

Plaintiff made no attempt to calculate the fair market value of the contracts referred to in paragraph 18 of the complaint until the year 1997.

**Answer to Request for Admission No. 34**

Admitted, except that this effort began in 1996.

**Request for Admission No. 35**

With respect to each of the following categories of information, admit or deny that plaintiff's records do not contain the information on a subscriber-specific basis for all of the healthcare coverage contracts referred to in paragraph 18 of the complaint:

(1) the subscriber's payment patterns from the contract's start date until January 1, 1987;
(2) the subscriber's claims experience from the contract's start date until January 1, 1987;
(3) the subscriber's level of satisfaction with plaintiff's services as of January 1, 1987;
(4) the existence and terms of any proposals for coverage that the subscriber received from another health insurer before January 1, 1987; and
(5) the subscriber's net annual income as of January 1, 1987.

**Answer to Request for Admission No. 35**

Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to these objections, Plaintiff answers as follows. Denied for (1) and (2). Admitted for (3), (4), and (5).

**Request for Admission No. 36**

With respect to each of the following categories of information, admit or deny that plaintiff's records do not contain the information for all of the participants covered by the healthcare coverage contracts referred to in paragraph 18 of the complaint:

(1) the participant's history of health problems before January 1, 1987;
(2) the participant's claims experience from the contract's start date until January 1, 1987;
(3) the participant's occupation as of January 1, 1987;
(4) the participant's income level as of January 1, 1987;
(5) the participant's education level as of January 1, 1987;
(6) the participant's marital status as of January 1, 1987; and
(7) the number, sex, and age of the participant's dependents as of January 1, 1987.

**Answer to Request for Admission No. 36**

Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome. Subject to these objections, Plaintiff answers as follows. Denied for (1) and (2). Admitted for (3), (4), (5), (6), and (7).

**Request for Admission No. 37**

With respect to each of the following categories of information, admit or deny that, in calculating the $6,256,006 tax refund set forth in the prayer for relief in the complaint, plaintiff did

not take into account the information on a subscriber-specific basis for all of the healthcare coverage contracts referred to in paragraph 18 of the complaint:

(1) the subscriber's payment patterns from the contract's start date until January 1, 1987;
(2) the subscriber's claims experience from the contract's start date until January 1, 1987;
(3) the subscriber's level of satisfaction with plaintiff's services as of January 1, 1987;
(4) the existence and terms of any proposals for coverage that the subscriber received from another health insurer before January 1, 1987; and
(5) the subscriber's net annual income as of January 1, 1987.

**Answer to Request for Admission No. 37**

Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome.

Subject to these objections, Plaintiff answers as follows. Admitted.

**Request for Admission No. 38**

With respect to each of the following categories of information, admit or deny that, in calculating the $6,256,006 tax refund set forth in the prayer for relief in the complaint, plaintiff did not take into account the information for all of the participants covered by the healthcare coverage contracts referred to in paragraph 18 of the complaint:

(1) the participant's gender;
(2) the participant's history of health problems before January 1, 1987;
(3) the participant's claims experience from the contract's start date until January 1, 1987;
(4) the participant's occupation as of January 1, 1987;
(5) the participant's income level as of January 1, 1987;
(6) the participant's education level as of January 1, 1987;
(7) the participant's marital status as of January 1, 1987; and
(8) the number, sex, and age of the participant's dependents.

**Answer to Request for Admission No. 38**

Plaintiff objects to this Request on the grounds that it is vague and unduly burdensome.

Subject to these objections, Plaintiff answers as follows. Denied for (2) and (3). Admitted for (1), (4), (5), (6), (7), and (8).

**Request for Admission No. 39**

As of January 1, 1987, in setting its rates for direct pay (individual) healthcare coverage contracts, plaintiff did not take into account the subscriber's claims history.

**Answer to Request for Admission No. 39**

Admitted.

**Request for Admission No. 40**

As of January 1, 1987, in setting its rates for group healthcare coverage contracts with fewer than fifty participants, plaintiff did not take into account the subscriber's claims history.

**Answer to Request for Admission No. 40**

Admitted.

**Request for Admission No. 41**

With respect to each of the following categories of information, admit or deny that, as of January 1, 1987, in setting its rates for healthcare coverage contracts, plaintiff did not take into account the information for all of the participants covered by the contract:

(1) the participant's gender;
(2) the participant's history of health problems before January 1, 1987;
(3) the participant's occupation as of January 1, 1987;
(4) the participant's income level as of January 1, 1987;
(5) the participant's education level as of January 1, 1987;
(6) the participant's marital status as of January 1, 1987; and
(7) the number, sex, and age of the participant's dependents.

**Answer for Request for Admission No. 41**

Plaintiff objects to this Request on the grounds that is it vague and unduly burdensome.

Subject to these objections, Plaintiff answers as follows. Denied for (2). Admitted for (1), (3), (4), (5), (6), and (7).

**Request for Admission No. 42**

With respect to each of the following categories of information, admit or deny that, as of January 1, 1987, in setting its rates for healthcare coverage contracts, plaintiff did not take into account the information:

(1) the subscriber's payment patterns from the contract's start date until January, 1987;
(2) the subscriber's level of satisfaction with plaintiff's services as of January 1, 1987;
(3) the existence and terms of any proposals for coverage that the subscriber received from another health insurer before January 1, 1987; and
(4) the subscriber's net annual income as of January 1, 1987.

**Answer to Request for Admission No. 42**

Plaintiff objects to this Request on the grounds that is it vague and unduly burdensome. Subject to these objections, Plaintiff answers as follows. Admitted.

**Request for Admission No. 43**

Each of the contracts referred to in paragraph 18 of the complaint had a term of one year or less.

**Answer to Request for Admission No. 43**

Admitted that the terms of the contracts are one year.

**Request for Admission No. 44**

Plaintiff currently markets its healthcare coverage products to groups and individuals previously covered by the types of expired healthcare coverage contracts for which plaintiff is seeking a deduction in this case.

**Answer to Request for Admission No. 44**

Plaintiff admits that it currently markets its healthcare coverage products to some of the groups and individuals previously covered by the types of expired healthcare coverage contracts for which plaintiff is seeking a deduction in this case.

**Request for Admission No. 45**

Plaintiff has sold healthcare coverage contracts to groups and individuals who were previously covered by the types of expired healthcare coverage contracts for which plaintiff is seeking a tax deduction in this case.

**Answer to Request for Admission No. 45**

Admitted.

**Request for Admission No. 46**

Some of the groups and individuals covered by the healthcare coverage contracts at issue in this case are presently covered by subsequently issued healthcare coverage contracts held by plaintiff.

**Answer to Request for Admission No. 46**

Admitted.

**Request for Admission No. 47**

In December, 1986, plaintiff expected an increase in enrollment losses in 1987 and subsequent years due to increased premium rates for its healthcare coverage contracts.

**Answer to Request for Admission No. 47**

Denied.

**Request for Admission No. 48**

As of January 1, 1987, plaintiff expected to experience an underwriting loss for the year 1987.

**Answer to Request for Admission No. 48**

Admitted.

**Request for Admission No. 49**

In December, 1986, the market for healthcare coverage contracts in Pennsylvania was very competitive due, in part, to the increasing popularity of new health insurance products, such as Health Maintenance Organizations ("HMOs"), Preferred Provider Organizations ("PPOs"), and Administrative Services Only ("ASOs").

**Answer to Request for Admission No. 49**

Plaintiff objects to this Request on the grounds that the terms "market for healthcare coverage contracts," "very competitive," and "new" are vague and undefined. Subject to these objections, Plaintiff answers as follows. Admitted that in December 1986, there was some degree of competition in the Pennsylvania insurance market due to health insurance products such as Health Maintenance Organizations ("HMOs"), Preferred Provider Organizations ("PPOs"), and Administrative Services Only ("ASOs").

**Request for Admission No. 50**

Due to increased competition in the health insurance industry, as of January 1, 1987, plaintiff was expecting to be unable to continue raising its premium rates to the same extent it had done over the preceding twenty years.

**Answer to Request for Admission No. 50**

Denied.

**Request for Admission No. 51**

Due to increased competition in the health insurance industry, as of January 1, 1987, plaintiff was expecting its subscriber attrition rate in the coming ten years to exceed the attrition rate experienced in the period 1980 through 1987.

**Answer to Request for Admission No. 51**

Denied.

**Request for Admission No. 52**

As of January 1, 1987, plaintiff was expecting its operating margins over the coming ten years to fall short of its operating margins over the preceding ten-year period.

**Answer to Request for Admission No. 52**

Denied.

Respectfully submitted,

Frederick H. Robinson
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Counsel of Record for Plaintiff

*Of Counsel:*
Clarence T. Kipps, Jr.
Maria O. Jones
Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Dated: September 5, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 5th day of September, 2006, caused a copy of the foregoing PLAINTIFF'S ANSWERS TO DEFENDANT'S SECOND SET OF REQUESTS FOR ADMISSION to be served by U.S. Mail upon the following:

Karen E. Servidea, Esquire
United States Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044
(202) 514-9440

Frederick H. Robinson



636258.1

# Defendant's Exhibit # 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA,<br>Plaintiff,<br>v.<br>THE UNITED STATES OF AMERICA,<br>Defendant. | Civil Action No. 05-503 T<br>Judge Thomas C. Wheeler |

**PLAINTIFF'S ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Hospital Service Association of Northeastern Pennsylvania ("Plaintiff") answers Defendant the United States of America's Second Set of Interrogatories as follows:

**Preliminary Statement**

The parties have agreed to prioritize discovery and Defendant has informed Plaintiff of the discovery requests it desires Plaintiff to answer first. This document contains answers only to those interrogatories in Defendant's Second Set of Interrogatories that Defendant has asked Plaintiff to answer first. Plaintiff will separately respond to the remaining interrogatories in Defendant's Second Set of Interrogatories in a timeframe to be agreed upon between Plaintiff and Defendant.

**General Objections**

1. Plaintiff objects to the United States' Second Set of Interrogatories to the extent the United States seeks to impose burdens or requirements on Plaintiff in excess of those imposed by the RCFC.

2. Plaintiff objects to the United States' Second Set of Interrogatories on the grounds that they exceed 25 in number including all discreet subparts.

3. Plaintiff reserves the right to supplement its answers to the United States' Second Set of Interrogatories as appropriate.

**Answers to Interrogatories**

**Interrogatory No. 1:**

If plaintiff responds with anything but an unequivocal admission to any request contained in Defendant's Requests for Admissions-Set No. 2:

(a) Quote the phrase, word, or words that plaintiff does not admit;
(b) State in detail each fact that (in plaintiff's view) supports the refusal to admit the clause, phrase, word, or words listed in response to Interrogatory 1(a), identifying all persons who have knowledge of each such fact and describing all documents that support each such fact; and
(c) If plaintiff does not agree with defendant's statement of the subject of the requested admission, fully state plaintiff's view of the facts, and separately set forth the evidence upon which plaintiff relies to support its point of view.

**Answer to Interrogatory No. 1:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and unreasonably cumulative and duplicative of other discovery requests. Plaintiff also objects to this Interrogatory on the grounds that it by itself exceeds the 25 interrogatories (including discreet subparts) permitted by RCFC 33(a). Subject to and without waiving its objections, Plaintiff answers as follows. Where applicable, and not objectionable on the grounds stated above, Plaintiff has explained the basis of its denials in its Answer to Defendant's Second Set of Interrogatories, and incorporates those answers herein.

**Interrogatory No. 2:**

State all facts upon which plaintiff relies to support its claim that a tax deductible "loss of intangible assets" occurred as alleged in the complaint.

**Answer to Interrogatory No. 2:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. During the years at issue, Plaintiff held intangible assets including healthcare coverage contracts that it held since at least January 1, 1987. Each such contract was a valuable asset. In the year the contract terminated or was canceled, there was a closed and completed transaction with respect to that asset. When these contracts terminated or were canceled, Plaintiff sustained a loss. This loss was not compensated for by insurance or otherwise. See also Plaintiff's answer to Interrogatory 3 below.

**Interrogatory No. 3:**

State all facts upon which plaintiff relies to support its claim that each of the contracts referred to in paragraph 18 of the complaint was terminated or cancelled in the year for which plaintiff claims it as a loss.

**Answer to Interrogatory No. 3:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, overbroad, and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff relies on the fact that for each such contract either the subscriber or Plaintiff actually terminated or canceled the contract in the year in which Plaintiff claims the loss deduction. Plaintiff also relies on the fact that for many, if not all, contracts that were terminated or canceled, either the subscriber or Plaintiff communicated that fact to the other party. Plaintiff also relies on the fact that it made entries into a subscriber computer system stating the date each such contract was terminated or canceled. Plaintiff also relies on the fact that it has various internal reports verifying the termination or cancellation dates of the contracts.

**Interrogatory No. 4:**

Describe the method, assumptions, and calculations by which plaintiff computed the income tax refund claim of $6,256,006 set forth in the prayer for relief in the complaint, including the method, assumptions, and calculations by which plaintiff computed the fair market value on January 1, 1987, of the contracts referred to in paragraph 18 of the complaint.

**Answer to Interrogatory No. 4:**

Plaintiff computed the $6,256,006 set forth in the prayer for relief by identifying the group healthcare coverage contracts that terminated in each of the years at issue, and calculating the fair market value of each such contract as of January 1, 1987. The values were based on the valuation report prepared by Ernst & Young ("E&Y") in its report of April 10, 1997. This valuation report and supporting documentation describes the methods, assumptions, and calculations used to determine fair market value. These documents are being provided to Defendant.

Plaintiff notes that the fair market value of the contracts is not necessarily the same amount shown in the E&Y report. Plaintiff will provide what it contends to be the value of such contracts in its opening expert reports.

**Interrogatory No. 5:**

Identify all persons and/or organizations that participated in any manner in computing the $6,256,006 amount set forth in the complaint or conducted, at any time, a valuation of the contracts referred to in paragraph 18 of the complaint.

**Answer to Interrogatory No. 5:**

The following persons and organizations participated in some fashion in the computation of the claims: Ernst & Young, Plaintiff, the Internal Revenue Service, Parente Randolph, Lee Russell, John O'Conner, Clifford Jones, Bruce Darkes, Lee Holt, Mike Shields, David Bobonski,

Peter Wood, John Gorman, Dave Mielcarek, Marv Rosner, Suzanne Fletcher, Charles Morgan, Joan Petchal-Metcalf, and James Wilson.

**Interrogatory No. 6:**

Identify each sale of healthcare coverage contracts to another health insurance or health service provider that plaintiff has made at any time, including the purchaser, the date of the transaction, the number of contracts sold, the terms of the sale, and the method by which plaintiff calculated the amount of consideration for the sale.

**Answer to Interrogatory No. 6:**

There are no such sales.

**Interrogatory No. 7:**

Identify each purchase of healthcare coverage contracts from another health insurance or health service provider that plaintiff has made at any time, including the seller, the date of the transaction, the number of contracts bought, the terms of the sale, and the method by which plaintiff calculated the amount of consideration for the purchase.

**Answer to Interrogatory No. 7:**

There are no such purchases.

**Interrogatory No. 8:**

Identify each sale of a company by plaintiff wherein an element of the sale price was determined or affected by the value of healthcare coverage contracts, including the purchaser, the date of transaction, the number of contracts sold, the terms of the sale, and the method by which plaintiff calculated the amount of consideration for the sale.

**Answer to Interrogatory No. 8:**

There are no such sales.

**Interrogatory No. 9:**

Identify each purchase of a company by plaintiff wherein an element of the purchase price was determined or affected by the value of healthcare coverage contracts, including the seller, the date of the transaction, the number of contracts bought, the terms of the purchase, and the method by which plaintiff calculated the amount of consideration for the purchase.

**Answer to Interrogatory No. 9:**

There are no such purchases.

**Interrogatory No. 13:**

State all factors on which plaintiff relied in setting premium rates for direct pay (individual) healthcare coverage contracts during the period January 1, 1977, through January 1, 1987, and state how each factor was used in setting premium rates.

**Answer to Interrogatory No. 13:**

Plaintiff objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence because no direct pay, individual healthcare coverage contracts are at issue in this case.

**Interrogatory No. 14:**

State all factors on which plaintiff relied in setting premium rates for group health insurance subscribers of fewer than 100 participants during the period January 1, 1977, through January 1, 1987, and state how each factor was used in setting premium rates.

**Answer to Interrogatory No. 14:**

Plaintiff objects to this Interrogatory on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff is producing documentation describing how it set its premium rates for group health insurance subscribers of fewer than 100 participants during the period January 1, 1977, through January 1, 1987.

**Interrogatory No. 15:**

State all factors on which plaintiff relied in setting premium rates for group health insurance subscribers of more than ninety-nine participants during the period January 1, 1977, through January 1, 1987, and state how each factor was used in setting premium rates.

**Answer to Interrogatory No. 15:**

Plaintiff objects to this Interrogatory on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff is producing documentation describing how it set its premium rates for group health insurance subscribers of more than ninety-nine participants during the period January 1, 1977, through January 1, 1987.

**Interrogatory No. 16:**

State all factors on which plaintiff relied in setting premium rates for federal employee healthcare coverages during the period January 1, 1977, through January 1, 1987, and state how each factor was used in setting premium rates.

**Answer to Interrogatory No. 16:**

Plaintiff did not set the premium rates for federal employee health insurance subscription premiums. These rates were established on a national basis for all federal employee enrollees.

**Interrogatory No. 17:**

State whether plaintiff maintains specific records of the amount of profit earned from each healthcare coverage contract and, if so, describe the records so maintained and identify the person currently employed by plaintiff who is most familiar with such records.

**Answer to Interrogatory No. 17:**

Plaintiff does not normally maintain such records.

**Interrogatory No. 19:**

Describe plaintiff's practice of marketing health insurance products to former subscribers during the period January 1, 1977, through the present.

**Answer to Interrogatory No. 19:**

Plaintiff did not have any marketing practices that are specific to former subscribers during this time period. Plaintiff marketed to former subscribers in the same ways it marketed to

any other potential subscribers, including advertising through television, radio, outdoor, and print.

**Interrogatory No. 20:**

List all healthcare coverage contracts plaintiff entered into during the period January 1, 1977, through the present, with an individual or group that was previously covered by one of plaintiff's healthcare coverage contracts before it was terminated or cancelled and, for each such contract, state how much time passed between the termination of the original contract and the execution of the subsequent contract.

**Answer to Interrogatory No. 20:**

Plaintiff objects to this Interrogatory on the grounds that it is vague and unduly burdensome. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff does not know which of its subscribers during the period January 1, 1977, through the present were previously covered by one of Plaintiff's healthcare coverage contracts. It may be possible to perform an analysis of Plaintiff's membership data to determine the answer to that question, but Plaintiff has not conducted such an analysis. The relevant records will be produced to Defendant.

**Interrogatory No. 21:**

State whether at any time plaintiff has capitalized plaintiffs costs associated with internally developing or otherwise acquiring healthcare coverage contracts and, if not, state all reasons why plaintiff has not capitalized such costs.

**Answer to Interrogatory No. 21:**

Plaintiff has never capitalized the costs associated with internally developing or otherwise acquiring health insurance subscription contracts. The costs of internally developing health insurance subscription contracts are premium acquisition expenses that are ordinary and necessary business expenses currently deductible under 26 U.S.C. § 832(c)(1), and are not otherwise required to be capitalized. Plaintiff has never purchased or otherwise acquired health

insurance contracts so it has not had occasion to treat the costs incurred in such an acquisition as capital expenses.

**Interrogatory No. 22:**

Identity and describe the costs plaintiff incurred between 1987 and 1997 in creating, or facilitating the creation of, healthcare coverage contracts.

**Answer to Interrogatory No. 22:**

Plaintiff objects to this Interrogatory on the grounds that it is vague, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiving its objections, Plaintiff answers as follows. Plaintiff is producing documentation that identify and describe its incurred costs.

**Interrogatory No. 23.**

State whether plaintiff incurred the costs referred to in number 22 supra, in each of the years 1987 through 1997.

**Answer to Interrogatory No. 23**

Plaintiff incurred costs in creating or facilitating the creation of healthcare coverage contracts in each of the years 1987 through 1997.

**Interrogatory No. 24:**

State the reason or reasons why plaintiff did not claim deductions for terminated or cancelled healthcare coverage contracts on its original federal income tax returns for the 1987 through 1995 tax years.

**Answer to Interrogatory No. 24:**

In the initial years following the enactment of Tax Reform Act of 1986 (the "Act"), Plaintiff, as well as other Blue Cross and Blue Shield plans, which had become subject to federal income taxes for the first time in 1987, did not have a complete understanding of the newly applicable tax provisions, including the fresh start basis rule. In TAM 9533003, the IRS

determined that the fresh start basis rule of the Act could be used for purposes of claiming loss deductions under section 165 for abandoned software. Following the issuance of that ruling, Plaintiff obtained a valuation of its assets as of January 1, 1987, so that it could claim loss deductions upon the loss of those assets.

**Interrogatory No. 25:**

State the reason or reasons why plaintiff is not seeking a refund of federal income taxes for the 1987 through 1991 tax years based on the termination or cancellation of healthcare coverage contracts.

**Answer to Interrogatory No. 25:**

Plaintiff had net operating losses in the tax years 1987 through 1990. Plaintiff is claiming loss deductions for the years 1987 through 1990. These loss deductions result in additional NOL carryforwards in 1991, 1992, and 1993. Plaintiff is not seeking a refund for 1991 because the statute of limitations expired before the filing of this lawsuit.

Respectfully submitted,

Frederick H. Robinson
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)
Counsel of Record for Plaintiff

*Of Counsel:*
Clarence T. Kipps, Jr.
Maria O. Jones
Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Dated: September 5, 2006

## OATH TO ANSWERS TO INTERROGATORIES

I declare under penalty of perjury that the foregoing Plaintiff's Answers to Defendant's Second Set of Interrogatories are true and correct to the best of my knowledge, information, and belief.

Peter Wood

636281.1

**CERTIFICATE OF SERVICE**

I hereby certify that I have this 5th day of September, 2006, caused a copy of the foregoing PLAINTIFF'S ANSWERS TO DEFENDANT'S SECOND SET OF INTERROGATORIES to be served by U.S. Mail upon the following:

Karen E. Servidea, Esquire
United States Department of Justice
Tax Division
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Station
Washington, DC 20044
(202) 514-9440

Frederick H. Robinson