**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>Defendant. | Civil Action No. 05-503 T<br>Judge Thomas C. Wheeler |

**PLAINTIFF'S RESPONSES TO DEFENDANT'S**
**PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the Court of Federal Claims, Plaintiff Hospital Service Association of Northeastern Pennsylvania respectfully responds to Defendant's Proposed Findings of Uncontroverted Fact as follows:

1. At all times relevant to this case, plaintiff was a Pennsylvania nonprofit corporation doing business as an independent licensee of the Blue Cross and Blue Shield Association. Compl. ¶¶ 2, 9.

Response: Uncontroverted.

2. As a provider of health insurance, plaintiff is party to healthcare coverage contracts with individual and group subscribers. Compl. ¶ 16.

Response: Uncontroverted.

3. Plaintiff's healthcare coverage contracts obligate plaintiff to pay the healthcare costs of the individual or group members in exchange for the subscriber's payment of an insurance premium. Compl. ¶ 16.

Response: Uncontroverted.

4. In the ordinary course of its business, plaintiff incurs various expenses – such as, advertising, salaries, travel, actuarial fees to compute premiums, and overhead – to induce potential customers to enter into contracts. Plaintiff's Answers to Defendant's Second Set of Requests for Admission Nos. 2-10 (Def. Ex. 3, App. B at B-33-B-35); Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 19, 22 (Def. Ex. 4, App. B at B-56-B-58) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 1, Def. Ex. 5, App. B at B-64)).

Response: Uncontroverted.

5. Over the life of each contract, plaintiff incurs additional expenses to keep the policy in place. *See, e.g.,* Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 6, App. B, at B-77); Excerpt from Plaintiff's 1992 Annual Statement (Def. Ex. 7, App. B at B-88); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 8, App. B at B-103); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 9, App. B at B-116); Excerpt from Plaintiff's 1995 Annual Statement (Def. Ex. 10, App. B at B-127).

Response: Uncontroverted.

6. For purposes of its financial accounting (both as a tax-exempt entity and as a taxable entity), plaintiff treated the expenses referred to in Defendant's Proposed Findings of Fact Nos. 4 and 5 as current expenses (not capital items). Plaintiff's Answers to Defendant's Second Set of Requests for Admission Nos. 1, 23 (Def. Ex. 3, App B at B32-B-33, B-38); Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 21 (Def. Ex. 4, App B at B-57-B-58); *see, e.g.,* Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 6, App B at B-74); Excerpt from Plaintiff's 1992 Annual Statement (Def. Ex. 7, App. B at B-84); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 8, App. B at B-99); Excerpt from Plaintiff's 1994

Annual Statement (Def. Ex. 9, App. B at B-112); Excerpt from Plaintiff's 1995 Annual Statement (Def. Ex. 10, App. B at B123).

Response: Uncontroverted.

7. For purposes of its tax accounting after 1986, plaintiff treated the expenses referred to in Defendant's Proposed Findings of Fact Nos. 4 and 5 as ordinary expenses (*i.e.*, both the post-1986 expenditures incurred to maintain its pre-1987 contracts, and its post-1986 expenditures incurred to solicit and maintain its post-1986 contracts). Plaintiff's Answers to Defendant's Second Set of Requests for Admission Nos. 1, 21-22 (Def. Ex. 3, App. B at B-32-B-33, B-37-B-38); Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 21 (Def. Ex. 4, App. B at B-57-B-58); *see, e.g.,* Excerpt from Plaintiff's original 1991 income tax return (Def. Ex. 11, App. B at B-131); Excerpt from Plaintiff's original 1992 income tax return (Def. Ex. 12, App. B at B-134); Excerpt from Plaintiff's original 1993 income tax return (Def. Ex. 13, App. B, at B-137); Excerpt from Plaintiff's original 1994 income tax return (Def. Ex. 14, App. B, at B-140); Excerpt from Plaintiff's original 1995 income tax return (Def. Ex. 15, App. B, at B-143); Excerpt from Plaintiff's original 1996 income tax return (Def. Ex. 16, App. B, at B-146-B-151); Excerpt from Plaintiff's original 1997 income tax return (Def. Ex. 17, App. B, at B-154-B-156).

Response: Uncontroverted.

8. On plaintiff's income tax returns for the years 1987 through 1995, as originally filed, plaintiff claimed no loss deductions for terminated contracts. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 26 (Def. Ex. 3, App. B at B-38).

Response: Uncontroverted.

9. Plaintiff first claimed loss deductions for terminated contracts in September 1996

on its amended returns for 1991 and 1992. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 27 (Def. Ex. 3, App. B at B-39); Compl. ¶¶ 32, 40.

Response: Uncontroverted, although Plaintiff notes that it also claimed loss deductions for terminated contracts in September 1996 on amended returns for other years not at issue in this case.

10. After filing its amended returns for 1991 and 1992, plaintiff filed refund claims for the 1993, 1994, and 1995 tax years, seeking deductions for terminated healthcare coverage contracts. Plaintiff's Answers to Defendant's First Set of Interrogatories Nos. 6-14 (Def. Ex. 2, App. B at B-14-B-20); Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 27 (Def. Ex. 3, App. B at B-39); Compl. ¶¶ 48, 56, 64.

Response: Uncontroverted.

11. After filing its amended returns for 1991 and 1992, plaintiff claimed deductions for terminated contracts on its original 1996 and 1997 returns. Plaintiff's Answers to Defendant's First Set of Interrogatories Nos. 15, 19 (Def. Ex. 2, App. B at B-20, B-22-B23); Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 28 (Def. Ex. 3, App. B at B-39); Compl. ¶¶ 72, 80.

Response: Uncontroverted.

12. At no time between the filing of its original returns for 1987 through 1995 and the filing of its amended 1991 and 1992 returns, did plaintiff request or secure the consent of the Internal Revenue Service (the "IRS") to change its method of accounting for the termination or cancellation of healthcare coverage contracts. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 29 (Def. Ex. 3, App. B at B-39) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 3 (Def. Ex. 5, App. B at B-65)).

Response: Uncontroverted.

13. At no time between the filing of its original returns for 1987 through 1995 and the filing of its 1993 through 1995 refund claims, did plaintiff request or secure the consent of the IRS to change its method of accounting. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 29 (Def. Ex. 3, App. B at B-39) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 3 (Def. Ex. 5, App. B at B-65)).

Response: This proposed finding of fact appears to be incomplete. Plaintiff assumes Defendant intended this proposed find to read: "At no time between the filing of its original returns for 1987 through 1995 and the filing of its 1993 through 1995 refund claims, did plaintiff request or secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts." If that was the intended proposed finding, it is uncontroverted.

14. At no time between the filing of its original returns for 1987 through 1995 and the filing of its original 1996 and 1997 returns did plaintiff request or secure the consent of the IRS to change its method of accounting. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 30 (Def. Ex. 3, App. B at B-39-B-40) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 3 (Def. Ex. 5, App. B at B-65)).

Response: This proposed finding of fact appears to be incomplete. Plaintiff assumes Defendant intended this proposed find to read: "At no time between the filing of its original returns for 1987 through 1995 and the filing of its original 1996 and 1997 returns did plaintiff request or secure the consent of the IRS to change its method of accounting for the termination or cancellation of healthcare coverage contracts." If that was the intended proposed finding, it is uncontroverted.

15. Since the filing of this suit, plaintiff stipulated to the dismissal of its claim for the 1991 year for failure to have filed its refund claim within the period of limitation provided by I.R.C. § 6511(a). Plaintiff's Answers to Defendant's First Set of Requests for Admission No. 1-2 (Def. Ex. 1, App. B at B-2-B-3); Plaintiff's Answers to Defendant's First Set of Interrogatories No. 2 (Def. Ex. 2, App. B at B-11); Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 25 (Def. Ex. 4, App. B at B-59).

Response: Uncontroverted.

16. The valuation report written by Ernst & Young and submitted to the IRS by plaintiff claims that the fair market value of plaintiff's group healthcare coverage contracts as of January 1, 1987, was over $32 million. Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 4 (Def. Ex. 4, App. B at B-53); Excerpt from Ernst & Young Valuation Report (Def. Ex. 18, App. B at B-159).

Response: Uncontroverted.

17. Plaintiff's average net underwriting income (premiums minus claims and related expenses) during the period 1991 through 1995 was $12.5 million per year. Excerpt from Plaintiff's 1991 Annual Statement (Def. Ex. 6, App. B at B-74); Excerpt from Plaintiff's 1992 Annual Statement (Def. Ex. 7, App. B at B-84); Excerpt from Plaintiff's 1993 Annual Statement (Def. Ex. 8, App. B at B-99); Excerpt from Plaintiff's 1994 Annual Statement (Def. Ex. 9, App. B at B-112); Excerpt from Plaintiff's 1995 Annual Statement (Def. Ex. 10, App. B at B-123).

Response: Uncontroverted that the average of Plaintiff's net underwriting income for each of the years 1991 through 1995 was approximately $12.5 million per year.

18. According to the valuation report prepared by Ernst & Young and submitted to the IRS by plaintiff, at least some of the contracts held by plaintiff in 1987 are likely to last

beyond the year 2032. Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 4 (Def. Ex. 4, App. B at B-53); Excerpt from Ernst & Young Valuation Report (Def. Ex. 18, App. B at B-203).

Response: Uncontroverted.

19. Plaintiff plans to continue claiming § 165(a) deductions in the years that the remaining contracts that existed on January 1, 1987, terminate. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 33 (Def. Ex. 3, App. B at B-40).

Response: Uncontroverted.

20. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's payment patterns. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 37 (Def. Ex. 3, App. B at B-41-B42).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material.

21. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's claims experience. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 37 (Def. Ex. 3, App. B at B-41-B42).

Response: Denied. The Ernst & Young Valuation Report is based on each subscriber's premium. Def. Ex. 18 at 15 (Def. App. B at B-180). Accordingly, claims experience was inherently taken into account to the extent that a subscriber's premium is based on such experience, as is the case for experience-rated subscribers, for example. *See also* Defendant's Proposed Finding No. 28. In addition, this proposed finding is not supported by the cited

material. In particular, Plaintiff's admission that a subscriber's claims experience was not taken into account for "all" contracts being valued does not imply that such information was not taken into account for any such contracts.

22. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's level of satisfaction with plaintiff's services. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 37 (Def. Ex. 3, App. B at B-41-B42).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material.

23. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the existence and terms of any proposals for coverage that the subscriber had received from other health insurers. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 37 (Def. Ex. 3, App. B at B-41-B42).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material.

24. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not take into account the subscriber's net annual income. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 37 (Def. Ex. 3, App. B at B-41-B42).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material.

25. In valuing each healthcare coverage contract that existed on January 1, 1987, for

purposes of its complaint, plaintiff did not consider each contract participant's gender. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material.

26. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not directly consider each contract participant's history of health problems. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 4 (Def. Ex. 5, App. B. at B-65-B66)).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material.

27. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not directly consider each contract participant's claims experience. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 4 (Def. Ex. 5, App. B. at B-65-B66)).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material. *See* Plaintiff's Response to Defendant's Proposed Finding No. 21.

28. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff considered each contract participant's claims experience only insofar as it was reflected in 1986 premium rates. Plaintiff's Answers to Defendant's Second Set

of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 4 (Def. Ex. 5, App. B. at B-65-B-66)).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material. *See* Plaintiff's Response to Defendant's Proposed Finding No. 21.

29. In valuing the majority of the healthcare coverage contracts that existed on January 1, 1987, for purposes of its complaint, plaintiff considered the history of health problems of each contract's participants only insofar as (1) such history was reflected in claims experience and (2) such claims experience was reflected in 1986 premium rates. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 4 (Def. Ex. 5, App. B. at B-65-B-66)).

Response: Generally uncontroverted, although this proposed finding is vague and is not entirely supported by the cited material.

30. Plaintiff's 1986 premium rates for contracts with fewer than fifty participants did not take into account the subscriber's claims experience. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 40 (Def. Ex. 3, App. B at B-43).

Response: Uncontroverted.

31. Plaintiff's 1986 premium rates for some categories of contracts were calculated based on the claims experience of more than just the participants to the specific contract being rated. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 41 (Def. Ex. 3, App. B at B-43) (supplemented by Letter of September 22, 2006, from Adam Feinberg to

Karen Servidea ¶ 4 (Def. Ex. , App. B at B-65-B-66)).

Response: Uncontroverted.

32. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider each contract participant's occupation. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42).

Response: Uncontroverted.

33. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider each contract participant's income level. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38.

Response: Uncontroverted.

34. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider each contract participant's education level. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42).

Response: Uncontroverted.

35. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider each contract participant's marital status. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42).

Response: Uncontroverted.

36. In valuing each healthcare coverage contract that existed on January 1, 1987, for purposes of its complaint, plaintiff did not consider the number, sex, and age of each

participant's dependents. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 38 (Def. Ex. 3, App. B at B-42).

Response: Uncontroverted.

37. The Ernst & Young report submitted by plaintiff to the IRS did not analyze more than a few of the unique characteristics of each contract to determine its fair market value as of January 1, 1987. Plaintiff's Answers to Defendant's Second Set of Requests for Admission Nos. 37, 38 (Def. Ex. 3, App. B at B-41-B-42) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 4 (Def. Ex. 5, App. B at B-65-B-66)); Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 4 (Def. Ex. 4, App. B. at B-53); Excerpt from Ernst & Young Valuation Report (Def. Ex. 18, App. B at B-178-B-193).

Response: Denied and objectionable as argumentative and vague. The Ernst & Young report analyzed a number of unique characteristics of each contract, including its 1986 premium revenue, its type, the manner in which it was rated, the number of subscribers, and its original effective date (*e.g.*, to compute its age as of 1986). Def. Ex. 18 at 13, 15, 17 (Def. App. B at B-178, B-180, B-180).

38. The Ernst & Young report submitted by plaintiff to the IRS gathered and averaged data from all or broad categories of the contracts to determine each contract's fair market value as of January 1, 1987. Plaintiff's Answers to Defendant's Second Set of Requests for Admission Nos. 37, 38 (Def. Ex. 3, App. B at B-41-B-42) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 4 (Def. Ex. 5, App. B at B-65-B-66)); Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 4 (Def. Ex. 4, App. B. at B-53); Excerpt from Ernst & Young Valuation Report (Def. Ex. 18, App. B at B-178-B-193).

Response: Denied objectionable as argumentative and vague. *See* Plaintiff's Response

to Defendants Proposed Finding No. 37 for contract specific data that was utilized. Uncontroverted that some averaged data was used in the Ernst & Young report.

39. In the years 1987 through 1997, plaintiff incurred substantial costs in creating, or facilitating the creation of, healthcare coverage contracts. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 2 (Def. Ex. 3, App. B at B-33).

Response: Uncontroverted.

40. The costs plaintiff incurred in the years 1987 through 1997 in creating, or facilitating the creation of, healthcare coverage contracts included advertising, salaries (and related expenses), travel, equipment, supplies, printing, stationery, postage, and telephone. Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 22 (Def. Ex. 4, App. B at B-58) (supplemented by Letter of September 22, 2006, from Adam Feinberg to Karen Servidea ¶ 1 (Def. Ex. 5, App. B at B-64)).

Response: Uncontroverted.

41. For purposes of its financial accounting records, plaintiff never capitalized the costs of creating, or facilitating the creation of, healthcare coverage contracts. Plaintiff's Answers to Defendant's Second Set of Requests for Admission Nos. 1, 23 (Def. Ex. 3, App. B at B-32-B-33, B-38).

Response: Uncontroverted.

42. Consistent with professional financial accounting standards and applicable insurance regulations, plaintiff has always written off the costs of creating, or facilitating the creation of, healthcare coverage contracts in the year in which they were incurred. Plaintiff's Answers to Defendant's Second Set of Requests for Admission Nos. 1, 23-25 (Def. Ex. 3, App. B at B-32-B-33, B-38).

Response: Uncontroverted.

43. In each of the years 1987 through 1997, plaintiff deducted the costs of creating, or facilitating the creation of, healthcare coverage contracts in determining its tax liability. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 21-22 (Def. Ex. 3, App. B at B-37-B-38); Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 21 (Def. Ex. 4, App. B at B-57-B-58).

Response: Uncontroverted.

44. Plaintiff contends that for each of the 1992 through 1997 tax years, it is entitled to deduct the current costs it incurred in that year in creating contracts, as well as the losses it sustained upon the termination of contracts created before January 1, 1987. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 31 (Def. Ex. 3, App. B at B-40).

Response: Uncontroverted.

45. Plaintiff has never purchased healthcare coverage contracts. Plaintiff's Answers to Defendant's Second Set of Interrogatories No. 21 (Def. Ex. 4, App. B at B-57-B-58).

Response: Uncontroverted.

46. Plaintiff has never capitalized the costs associated with creating healthcare coverage contracts. Plaintiff's Answers to Defendant's Second Set of Requests for Admission No. 1 (Def. Ex. 3, App. B at B-32-B33).

Response: Uncontroverted.

Respectfully submitted,

____/s/ Frederick H. Robinson______
Frederick H. Robinson
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Counsel of Record for Plaintiff

*Of Counsel:*
Clarence T. Kipps, Jr.
Maria O. Jones
Adam P. Feinberg
MILLER & CHEVALIER CHARTERED
655 Fifteenth Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 626-5800
(202) 628-0858 (facsimile)

Dated: April 30, 2007