IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-503 T
(JUDGE WHEELER)

HOSPITAL SERVICE ASSOCIATION OF NORTHEASTERN PENNSYLVANIA,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

DEFENDANT'S RESPONSE TO PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1. HSA's claims with respect to its section 165 losses relating to healthcare coverage contracts were disallowed by the Internal Revenue Service, as were the claims of almost all the other similarly situated Blue Cross/Blue Shield organizations.

a. Response: Objection.

This proposed finding is vague insofar as it depends on the definition of "similarly situated." For purposes of settlement, plaintiff is not similarly situated to other Blue Cross/Blue Shield ("BC/BS") organizations that are not in litigation. *See infra* objection a. to proposed finding no. 2.

b. Response: Objection.

To the extent that this proposed finding relates to the refund claims of other taxpayers, it is irrelevant to plaintiff's claims. Indeed, plaintiff never even cites the

proposed finding in its argument in opposition to defendant's motion for summary judgment and in support of plaintiff's cross-motion for partial summary judgment, because it has no legal relevance to the issues in this case. The only precedent remotely relevant is *International Business Machines Corp. v. United States*, 343 F.2d 914 (Ct. Cl. 1965) ("*IBM*"), a decision that has since been limited to its facts. *Knetsch v. United States*, 348 F.2d 932, 940 n.14 (Ct. Cl. 1965); *see also Florida Power & Light Co. v. United States*, 375 F.3d 1119, 1125 (Fed. Cir. 2004) (holding that the *IBM* doctrine does not apply where the taxpayer seeking relief did not apply for a private letter ruling). Plaintiff has not even attempted to argue that this case comes within the narrow confines of the *IBM* doctrine. Accordingly, the proposed finding is of no consequence to the determination of this action.

c. Further response: Objection.

Plaintiff has not demonstrated that the "2006 Year in Review: Continuing Developments in the Taxation of Insurance Companies" ("PWC Year in Review") article (Pl. Ex. 2) was made "by, or from information transmitted by, a person with knowledge" relevant to the proposed finding. *See* Fed. R. Evid. 803(6). In addition, to the extent that the article constitutes a summary of voluminous data, plaintiff has failed to provide defendant an opportunity to examine the underlying data. *See* Fed. R. Evid. 1006.

d. Further response: Objection.

The materials cited do not support the finding that the IRS disallowed the claims of almost all the other similarly situated BC/BS organizations. The "PWC Year in

Review" article does not say anything about the disallowance of claims brought by other BC/BS organizations.

e. Proposed revision: HSA's claims with respect to its section 165 losses relating to healthcare coverage contracts were disallowed by the Internal Revenue Service.

2. The Internal Revenue Service has proffered a national settlement to all the Blue Cross/Blue Shield organizations not currently in litigation for losses arising from the cancellation or termination of healthcare coverage contracts.

a. Response: Objection.

To the extent that this proposed finding relates to the IRS's settlement of the refund claims of other taxpayers, it is irrelevant to plaintiff's claims. Indeed, plaintiff never even cites the proposed finding in its argument in opposition to defendant's motion for summary judgment and in support of plaintiff's cross-motion for partial summary judgment, because it has no legal relevance to the issues in this case. First, plaintiff is not similarly situated to the BC/BS organizations that are not currently in litigation. Once plaintiff filed its refund action in court, its case was referred to the DOJ, and the authority to settle its case shifted from the IRS to the Attorney General. I.R.C. § 7122(a). This authority cannot be defeated by a settlement made by the IRS with another taxpayer, since the IRS can no more settle this case indirectly by binding the DOJ to settlement terms the IRS negotiated with other taxpayers than the IRS can settle the case directly. *Slovacek v. United States*, 40 Fed. Cl. 828, 833 (Fed. Cl. 1998).

Second, even if plaintiff were similarly situated to the BC/BS organizations not currently in litigation, it has not offered any evidence that the Government abused its

settlement discretion. It is well-settled that the Government's determination to compromise a case with one taxpayer does not require it to offer the same terms to other similarly situated taxpayers. *Id.* at 832; *Bunce v. United States*, 28 Fed. Cl. 500, 511 (1993). To prevail on an abuse of settlement discretion claim, a taxpayer must show both (1) that other similarly situated taxpayers have received more favorable settlements and (2) that the IRS or DOJ intentionally singled out the taxpayer for arbitrary or irrational reasons. *Slovacek*, 40 Fed. Cl. at 832. Plaintiff has not claimed that the IRS or DOJ singled it out for arbitrary or irrational reasons.

Finally, the IRS has broad discretion to settle tax cases, including for reasons, such as collectibility and effective tax administration, that are unrelated to the merits of a taxpayer's claim. *See* 26 C.F.R. § 301.7122-1. Thus, the proposed finding would not support a conclusion that the IRS previously determined that claims like plaintiff's are legally valid. Of course, such a conclusion itself would be irrelevant since "the Commissioner may change an earlier interpretation of the law, even if such a change is made retroactive in effect." *Dickman v. Comm'r*, 465 U.S. 330, 343 (1984). The question before the Court is what the law requires on the facts of plaintiff's case, not whether or how other cases were settled.

Accordingly, the proposed finding is of no consequence to the determination of this action.

b. Further response: Objection.

Defendant incorporates by reference objection c. to proposed finding no. 1.

3. In the national settlement offer, the Government agreed that a loss deduction is allowable upon termination of a healthcare coverage contract with respect to which the taxpayer claims a stepped-up basis as a result of the Fresh Start Basis Rule.

   a. Response: Objection.

      Defendant incorporates by reference objection a. to proposed finding no. 2.

   b. Further response: Objection.

      Defendant incorporates by reference objection c. to proposed finding no. 1.

4. In the national settlement offer, the Government will allow the Blue Cross/Blue Shield organizations to deduct 80 percent of the appraised value of the terminated healthcare coverage contracts at issue, subject to an overall valuation limitation.

   a. Response: Objection.

      Defendant incorporates by reference objection a. to proposed finding no. 2.

   b. Further response: Objection.

      Defendant incorporates by reference objection c. to proposed finding no. 1.

5. The national settlement offer contemplates that a Closing Agreement will form part of the settlement which will, in effect, determine the taxpayers' section 165 deductions for all future years.

   a. Response: Objection.

      Defendant incorporates by reference objection a. to proposed finding no. 2.

   b. Response: Objection.

      Defendant incorporates by reference objection c. to proposed finding no. 1.

c. Further response: Objection.

The proposed finding that a Closing Agreement will determine a taxpayer's section 165 deductions for all future years constitutes a conclusion of law.

6. The settlement permanently settles the section 165 deduction issue for the parties to the settlement.

a. Response: Objection.

Defendant incorporates by reference objection a. to proposed finding no. 2.

b. Further response: Objection.

The proposed finding constitutes a conclusion of law.

7. In each of its taxable years beginning in 1987 HSA suffered losses when some of its healthcare coverage contracts were cancelled or terminated.

a. Response: Objection.

Plaintiff has not demonstrated that the Ernst & Young Valuation Report (Def. Ex. 18) was made "by, or from information transmitted by, a person with knowledge" relevant to the proposed finding. *See* Fed. R. Evid. 803(6). The Report itself (Def. Ex. 18 at B-161) states that it was based on data received from other sources and that the author of the Report did not attempt to verify the information received from such sources. In addition, to the extent that the Report constitutes a summary of voluminous data, plaintiff has failed to provide defendant an opportunity to examine the underlying data. *See* Fed. R. Evid. 1006.

b. Response: Objection.

The materials cited do not support the proposed finding. First, the Ernst & Young

Valuation Report (Def. Ex. 18) does not state that some of plaintiff's healthcare coverage contracts were cancelled or terminated in any taxable year after 1995. Second, the Ernst & Young Valuation Report does not show that plaintiff suffered a loss, within the meaning of I.R.C. § 165(a), each time a contract cancelled or terminated. Section 165(a) allows a deduction only to the extent that a taxpayer sustained an actual loss on an investment. *United States v. Flannery*, 268 U.S. 98 (1925). The Report does not show that plaintiff invested any specific amount of capital in each contract that was actually lost upon the contract's termination. Finally, a taxpayer is entitled to deductions under § 165(a) only for losses that are "evidenced by closed and completed transactions, fixed by identifiable events." 26 C.F.R. § 1.165-1(b). In *Golden State Towel & Linen Serv. v. United States*, 373 F.2d 938, 944 (Ct. Cl. 1967), the Court held that this requirement means that a tax loss may be claimed only when "all or a substantial, identifiable, vendible portion of [a customer-based intangible] . . . terminate[s]." The Ernst & Young Valuation Report does not show that plaintiff experienced a loss of such a portion of its contracts in each year.

c. Further response: Objection.

The proposed finding is not one of fact, but actually a conclusion of law. It is, indeed, the question presented by this case.

d. Proposed revision: In each of its taxable years beginning in 1987, some of plaintiff's healthcare coverage contracts were cancelled or terminated.

8. HSA determined the individual January 1, 1987, value of each and every one of its group healthcare coverage contracts (which range from less than $100 to more than $400,000)

and claimed, under Code section 165, loss deductions for each lost contract in the year of the loss.

a. Response: Objection

Defendant incorporates by reference objection a. to proposed finding no. 7.

b. Response: Objection.

The materials cited do not support the proposed finding that plaintiff determined the individual January 1, 1987, value of each of its lost contracts. The Ernst & Young Valuation Report (Def. Ex. 18) did not analyze more than a few of the unique characteristics of each contract. Pl.'s Resp. to Def.'s Proposed Findings of Fact Nos. 20, 22-36; Def.'s Proposed Findings of Fact Nos. 21, 37. In addition, the Report gathered and averaged data from all or broad categories of contracts (Pl.'s Resp. to Def.'s Proposed Findings of Fact No. 38).

d. Proposed revision: To determine the January 1, 1987, value of each of its lost contracts, plaintiff gathered and averaged data from all or broad categories of contracts. Plaintiff then claimed loss deductions under I.R.C. § 165.

9. HSA claims loss deductions, not depreciation deductions, for the cancellation, abandonment or termination of its healthcare coverage contracts.

a. Response: Agree.

Respectfully submitted,

/s/ Karen Servidea
KAREN SERVIDEA
*Attorney of Record*
*United States Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 616-3423*
*Fax: (202) 514-9440*
*Email: karen.e.servidea@usdoj.gov*

EILEEN J. O'CONNOR
*Assistant Attorney General*
DAVID GUSTAFSON
*Chief, Court of Federal Claims Section*
W.C. RAPP
*Senior Trial Attorney*

May 31, 2007
Date

/s/ W.C. Rapp
Of Counsel